**In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.**

**MDL No. 381.**

United States District Court,
E.D. New York.

March 10, 1983.

Victor J. Yannacone, Jr., Yannacone & Yannacone, P.C., Patchogue, N.Y., for plaintiffs.

Morton B. Silberman, Clark, Gagliardi & Miller, White Plains, N.Y., for Thompson-Hayward.

Leonard L. Rivkin, Rivkin, Leff, Sherman & Radler, Garden City, N.Y., for Dow Chemical.

Wendell B. Alcorn, Jr., Cadwalader, Wickersham & Taft, New York City, for Diamond Shamrock.

John C. Sabetta, Townley & Updike, New York City, for Monsanto.

William Krohley, Kelley, Drye & Warren, New York City, for Hercules.

David R. Gross, Budd, Larner, Kent, Gross, Picillo & Rosenbaum, Newark, N.J., for Thompson Chemical Corp.

Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., for Riverdale Chemical Co.

Thomas Beck, Arthur, Drye & Kalish, P.C., New York City, for Uniroyal, Inc.

Arvin Maskin, Gretchen Leah Witt, Civil Division, U.S. Dept. Justice, Washington, D.C., for the United States of America.

## PRETRIAL ORDER NO. 48

GEORGE C. PRATT,* Circuit Judge.

In this multidistrict litigation, plaintiffs, Vietnam war veterans and members of their families, seek to recover for injuries allegedly suffered as a result of the veterans' exposure to various herbicides, which defendants manufactured and supplied to the government for use in the Vietnam war. On April 29, 1982, the court appointed Sol Schreiber as special master pursuant to F.R.C.P. 53, to supervise all pretrial discovery for the Phase I trial on the government contract defense, scheduled to commence on June 27, 1983. The elements of this affirmative defense are set out in Pretrial Order No. 33, February 24, 1982, 534 F.Supp. 1046.

Since most of the defendants' documentary discovery on the government contract defense centers on documents which are in the possession of various government agencies and which may be subject to executive privilege claims, the special master submitted to the court a report entitled "Recommended Procedures for Assertion of Executive Privilege", a copy of which is annexed hereto. Defendants have submitted a letter with attached exhibits in support of their objection to portions of the special master's recommendation, and the government has submitted a memorandum in support of the recommendation with suggestions for two modifications. Counsel for defendants submitted two additional letters, dated March 8, 1983, objecting to the recommended procedures.

▆ The government cannot be required to produce in litigation material which falls within the "deliberative process" privilege, *Kinoy v. Mitchell*, 67 F.R.D. 1, 10–11 (S.D. N.Y.1975), or the "state secrets" privilege, *United States v. Reynolds,* 345 U.S. 1, 6, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953). The former protects communications to the executive for purposes of decision making; the latter protects material which contains national security or state secrets. The special master recommended different proce-

dures for handling these two categories of materials and discussed them separately in his report.

### I. *Deliberative Process Privilege*

In his report to the court, the special master thoroughly discussed the rationale for the deliberative process privilege and the factors to be considered in determining whether the privilege should apply. Neither the government nor any party objects to his views on the subject, so it is not necessary for the court to duplicate that discussion here. Whether or not such a privilege will apply to particular documents or testimony must await the specifics of a particular claim, when and if it is made. As to the procedural side of the problem, now before the court, without expressing any view as to the scope or extent of the privilege, the court concludes that the special master has recommended a practical and efficient method for handling possible assertions of the privilege by the government, and the court adopts these procedures in full.

The deliberative process privilege satisfies the need for protecting the government's policy-making processes in that the evaluations, expressions of opinions, and recommendations on policy matters of government officials "are held confidential to preserve the free expression, integrity and independence of those responsible for making the determinations that enable government to operate." *Kinoy v. Mitchell,* 62 F.R.D. at 11 (footnote omitted). Briefly stated, the special master recommends that the following procedures be adopted for handling discovery of these materials:

1. *Documents*—If the government objects to production of a document on the basis of the deliberative process privilege, it shall submit an affidavit by an official of the agency having custody of the document describing the document in general terms, why the privilege should apply, and the harm which would result from disclosure. In addition, the government shall make the

* Of the United States Court of Appeals for the Second Circuit, sitting by designation.

document available to the special master for *in camera* inspection. The party seeking disclosure shall have seven days to submit to the special master and the government a statement of litigative need. After the special master has ruled on the privilege claim, the parties and the government may appeal his decision within ten days to this court.

2. *Depositions*—If the government asserts the privilege with respect to a witness at a deposition, the party seeking a response has seven days to submit to the government and the special master a copy of the unanswered questions, together with a detailed statement of litigative need. Seven days after that submission, the government must submit to the parties and the special master an affidavit by an official of the agency on whose behalf the privilege is asserted, stating why the privilege applies and what harm disclosure of the response would cause. In addition, the government must submit to the special master a detailed summary of the responses the witness would have made absent the privilege. The appeal procedure from the special master's ruling is the same as that with respect to documents.

No party has objected to the recommended procedures for assertion of the deliberative process privilege. However, the government recommends that the procedures be modified in two respects. First, it suggests that the special master determine whether a document is relevant to the litigation before requiring the government to assert the privilege formally. Second, it requests that the government be permitted to submit a more detailed affidavit to the special master in lieu of the requirement of automatic *in camera* review.

The special master considered the possibility of making a relevance finding prior to formal assertion of the deliberative process privilege and rejected it. In doing so, he noted that he will consider relevance in determining whether the privilege should apply, and the court agrees with his reasoning on this issue.

■ The court also concludes that the provision for automatic *in camera* inspection of a document at issue is fair. Courts have often employed this method to determine whether the privilege should apply. *See McClelland v. Andrus,* 606 F.2d 1278, 1290 (D.C.Cir.1979) (and cases cited therein). It enables the special master to make a speedy determination as to whether the document should be protected, thereby expediting discovery; at the same time, the government's burden is lessened because the affidavit it must submit in support of its claim of privilege need not be as detailed. *See Black v. Sheraton Corp. of America,* 564 F.2d 531, 543 (D.C.Cir.1977).

Because of the limited time remaining before the commencement of trial and because of the parties' need to conduct full discovery, the court concludes that *in camera* inspection provides the best method for determining whether the privilege is applicable. In its brief, counsel for the government states that in most instances there will be no objection to *in camera* inspection. If difficulties arise, they can be considered by the special master, and, if necessary, the court on a document-by-document basis. As indicated above, the court adopts the special master's recommended procedures for considering material claimed to be subject to the deliberative process privilege.

II. *State Secrets Privilege*

■ Material containing information concerning national defense, military secrets, or international relations is protected by the state secrets privilege. *See* Wright & Miller, *Federal Practice and Procedure: Civil* § 2019 (1970). Unlike the deliberative process privilege, which is qualified and may be overcome by a showing that the interests in disclosure outweigh the interests in non-disclosure, *see Kinoy v. Mitchell,* 65 F.R.D. at 11, the state secrets privilege is absolute and will not be overcome by a demonstration of litigative need, *United States v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953); *Halkin v. Helms,* 690 F.2d 977, 990 (D.C.Cir.1982). In addition, while *in camera* review of docu-

ments claimed to be protected by the deliberative process privilege is routinely utilized, *see McClelland v. Andrus,* 606 F.2d at 1290; *United States v. American Tel. & Tel. Co.,* 86 F.R.D. 603 (D.D.C.1979), (containing "Special Masters' Guidelines for the Resolution of Privilege Claims"), *in camera* inspection is not routine in cases where the state secrets privilege is invoked, *see United States v. Reynolds,* 345 U.S. at 10, 73 S.Ct. at 533; *Halkin v. Helms,* 690 F.2d at 990 n. 54.

To succeed on the government contract defense, a defendant must prove:

1. That the government established the specifications for "Agent Orange";

2. That the "Agent Orange" manufactured by the defendant met the government's specifications in all material respects; and

3. That the government knew as much as or more than the defendant about the hazards to people that accompanied use of "Agent Orange". Pretrial Order No. 33 at 16.

Of necessity, many of the documents defendants seek to discover for trial of the government contract defense are in the custody of government agencies, among them the Department of Defense, the Army, and the Air Force. Since "Agent Orange" was used in the military's chemical defoliant program during the Vietnam war, some of the information sought by defendants may relate to national security or contain state secrets. At the same time, defendants understandably wish to conduct as wide-ranging discovery as possible in order to determine the extent of the government's knowledge concerning the hazards connected with use of "Agent Orange".

The special master considered these factors in developing his recommendations for procedures for assertion of the state secrets privilege. He recognized that the case law indicates that, for assertion of the privilege, there must be a formal claim of privilege by the head of the department or agency in control of the matter after personal consideration by that officer, *United States v. Reynolds,* 345 U.S. at 7–8, 73 S.Ct. at 531;

he also recognized, that, in view of the large number of documents at issue here, a requirement that the government formally assert the privilege for all documents, including those which are not relevant to the litigation, may be oppressive and burdensome. In addition, he recognized, as do the government and all parties to the litigation, that the imminence of the trial date requires a speedy and efficient method of resolving privilege claims.

Briefly stated, the special master's recommended procedures for assertion of the state secrets privilege are as follows:

1. *Documents*—If the government believes that a document is protected by the privilege but is not relevant to the litigation, it shall supply to the parties and the special master an affidavit by one with knowledge of the document indicating why it is not relevant. The government shall also either (a) submit the document to the special master for *in camera* review, or (b) submit a more detailed affidavit on the issue of relevance. A party seeking disclosure has seven days to submit a statement showing why the document is relevant. If the special master determines that the document is relevant and the government asserts the privilege, it shall then submit to the parties and the special master an affidavit by the head of the agency having control over the matter describing the document in general terms, stating that the affiant has personally examined the documents and describing the harm which would result from disclosure. The party seeking disclosure has seven days to submit a statement of litigative need. The government may also submit the document to the special master for *in camera* inspection, or an affidavit describing it in more detail. After the special master rules on the privilege claim, the parties and the government may appeal his ruling to the court.

2. *Depositions*—If the government asserts the privilege with respect to a witness at a deposition, the party seeking a response has seven days to submit to the government and the special master a copy

of the unanswered questions and a detailed statement of relevance and litigative need. The government has seven days to submit to the special master and the parties an affidavit of nonrelevance and a summary of the responses the deponent would have made if the privilege were not asserted. If the special master determines that the questions are relevant, and the government asserts the state secrets privilege, it has seven days to submit to the parties and the special master an affidavit by the head of the agency having control over the matter stating that the affiant has personally reviewed the questions and the responses, and stating the harm resulting from disclosure. The government may also submit to the special master a summary of the responses for *in camera* inspection. The parties and the government may appeal the special master's ruling on the privilege claim to the court. App. at 14–16.

Defendants object to the recommended procedures on the ground that the government as a nonparty has no standing to object to discovery requests on relevance grounds. They argue that the government should be required to assert the state secrets privilege formally with respect to all documents requested, whether or not relevant to the issues in this case. The government, on the other hand, argues that to require it to assert the privilege formally with respect to each and every document, whether or not relevant to this litigation, may be burdensome and oppressive.

While it is not clear that a nonparty has standing to object on the ground of relevance, *see, e.g., Financial General Bank Shares, Inc. v. Lance,* 28 Fed.Rules Serv.2d 538, 541 n. 4 (S.D.N.Y.1979); *Ghandi v. Police Dept., City of Detroit,* 74 F.R.D. 115, 123 (E.D.Mich.1977); *Cooney v. Sun Shipbuilding & Drydock Co.,* 288 F.Supp. 708, 717 (E.D.Pa.1968), the special master determined that his recommendation that relevance be considered prior to assertion of the state secrets privilege "accommodate[s] the needs of the parties while protecting sensitive materials and minimizing the burden on the government." App. at 11.

The defendants' position is that permitting the government to assert a relevance claim before formally asserting the state secrets privilege inserts an additional step in the discovery proceedings that unduly prejudices defendants. They argue that, with less than four months before the commencement of the Phase I trial, they should not be required to show that documents are relevant before the government formally asserts the state secrets privilege.

This argument is disingenuous, to say the least. In its memorandum, the government outlined the procedures it is required to follow if it wishes to assert the state secrets privilege formally. These include:

1. submission of the proposed claim to the assistant attorney general of the civil division of the justice department;

2. review of the proposed claim by a privilege committee;

3. after approval by the privilege committee, submission of the claim to the office of the secretary of the relevant agency;

4. review by the secretary and execution of an affidavit affirming the propriety of asserting the privilege.

These procedures are obviously cumbersome and time consuming, but the issue now facing us is not the efficiency or validity of the government's established procedures. The issue, instead, is: how can this case be fairly and efficiently prepared for trial, given such governmental obstacles to releasing potentially relevant information? Requiring the government to follow these procedures for every document it believes should be protected by the state secrets privilege, whether or not relevant to this litigation would entail a much longer time than will be required by the special master's examination of the documents for relevance prior to formal assertion of the privilege. Contrary to defendants' position, the special master's recommended procedures are designed to enable defendants to obtain quickly all of the relevant documents and testimony not subject to privilege.

With respect to the defendants' argument that the government lacks standing to ob-

ject to the relevance of requested discovery, the court agrees with the special master that, in view of the large number of documents at issue here, a prior determination of relevance will tend to decrease the burden on the government. In addition, all parties, if they have not done so already, should inform the special master, in detail, of the nature of the information they believe is relevant in order to assist him in making his relevance determinations.

Defendants may be correct that the government has already located, segregated, microfilmed, and indexed these documents. Defendants' letter to court, Mar. 2, 1983. However, the inquiry as to the government's burden in producing the material does not end there. Indeed, in view of the procedures the government must follow before asserting the state secrets privilege formally, a requirement that the government formally assert the privilege with respect to every document it believes may be protected, whether or not relevant to this litigation, appears to be both burdensome and oppressive. As Judge Conner wrote in *Fein v. Numex Corp.*, 92 F.R.D. 94, 96 (S.D.N.Y.1981)

> It is difficult to imagine a considered evaluation of burdensomeness in the abstract, without balancing the degree of burdensomeness against the extent to which the discovery sought is relevant to the issues in the litigation. Even though a nonparty may be unconcerned with the outcome of a litigation, it may legitimately oppose even slight burden upon itself where the discovery sought is irrelevant.

█ The special master's recommended procedures provide an orderly method through which the defendants can obtain materials relevant to the Phase I trial without unduly burdening the government by requiring it to assert the state secrets privilege formally to protect documents that are not relevant to this litigation. The procedures contained in the special master's report of February 11, 1983, are adopted in full.

SO ORDERED.

## APPENDIX

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - x

IN RE                                    :          MDL # 381
                                                     (all cases)

"AGENT ORANGE"                :

                                            SPECIAL MASTER'S RECOMMENDED
PRODUCT LIABILITY LITIGATION  : PROCEDURES FOR ASSERTION OF
                                            EXECUTIVE PRIVILEGE

                                           :

- - - - - - - - - - - - - - x

In this multidistrict litigation, Vietnam veterans and members of their families are suing defendant chemical companies for damages for injuries allegedly received as a result of exposure to toxic herbicides, notably Agent Orange, manufactured by the defendants and supplied by them to the government for use during the Vietnam War. For case management purposes, the trial judge, Honorable George C. Pratt, directed that the action be tried in separate phases. Phase I, scheduled for trial on June 27, 1983, concerns issues presented by the government contract defense. The elements of this affirmative defense were set out by Judge Pratt in Pretrial Order No. 33 (dated February 24, 1982) and discussed in the Special Master's memorandum in Support of his Protective Order Governing Production of Environmental Protection Agency Documents (dated December 21, 1982.)

Most of the defendants' documentary discovery on the government contract defense

centers on documents which are in the possession of various government agencies. It is evident that formal procedures must be set forth for the assertion of executive privilege claims in this case. Executive privilege authorizes the government to withhold from production in litigation material which concerns national security or state secrets ("state secrets privilege") or which contains communications to the executive for purposes of decision-making ("deliberative process privilege"). For clarity, this memorandum of recommendations treats these two bases of executive privilege separately.

## I. Deliberative Process Privilege

The rationale for the deliberative process privilege is stated in *Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975): "The deliberative and decision-making processes of government officials are held confidential to preserve the free expression, integrity and independence of those responsible for making the determinations that enable government to operate." *Id.* at 11. *See In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 580 (E.D.N.Y.1979). The public has an interest in "encouraging candor in the exchange of views within the government." *Peck v. United States,* 88 F.R.D. 65 (S.D.N.Y.1980). The deliberative process privilege is limited in scope. It applies only to material reflecting the deliberative process—evaluations, expressions of opinions and recommendations on policy matters. *See Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975). The privilege extends to deliberations never memorialized in writing. *See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 325–26 (D.D.C.1966). Raw data and factual findings do not fall within the scope of the privilege because disclosure of facts, as opposed to opinions, would not hinder candor among government officials. *See In re Franklin National Bank Securities Litigation,* 478 F.Supp. at 581.

Unlike the state secrets privilege, the deliberative process privilege is a qualified privilege, *Kinoy v. Mitchell,* 65 F.R.D. at 11, and may be overcome by a showing that the interests in disclosure outweigh the interests in non-disclosure. For example, the party seeking disclosure may make a showing of litigative need for the document, which the government claims is protected by the privilege, sufficient to overcome the privilege. *See id.* In order to determine if this showing is sufficient, *in camera* review of the documents which the government claims are protected by the deliberative process privilege is utilized. *See McClelland v. Andus,* 606 F.2d 1278, 1290 (D.C.Cir.1979). Although not automatic, *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966), *in camera* review has become the norm in recent cases. See Special Master's Guidelines for the Resolution of Privilege Claims in *In re Amoxicillin Patent and Antitrust Litigation* and the Special Master's Guidelines in *United States v. ATT,* 86 F.R.D. 603 (D.D.C.1979).

In view of the limited time remaining before the June 27, 1983 trial, and in recognition of the parties' need for as much discovery as possible counterbalanced against the almost unlimited number of documents in the custody of at least fifteen government agencies, it is recommended that the government submit for the Special Master's *in camera* inspection all material which it asserts is protected by the deliberative process privilege in order to expedite discovery. In addition, defendants are to submit to the Special Master a statement of litigative need within 7 days after the government submits its affidavit claiming privilege. This, together with *in camera* inspection of the claimed privileged material will permit the Special Master to make recommendations on privilege questions in one proceeding rather than the two-step procedure recommended by defendants.[1]

It should be noted that because the Special Master will examine the documents *in*

---

**1.** In their memorandum on executive privilege, defendants proposed that the Special Master first determine whether the privilege applied based solely on the government's submission.

If the privilege was found to apply, then defendants would submit a statement of litigative need and the Special Master would then determine whether the privilege should be upheld.

*camera,* the affidavit which the government must submit to support its claim of deliberative process privilege need not be as detailed as an affidavit asserting state secrets privilege. *See Black v. Sheraton Corp. of America,* 564 F.2d 531, 543 (D.C.Cir.1977) (Where there is *in camera* review, less detail in the affidavit is required because the court need not rely solely on the affidavit in deciding whether the material is protected by the privilege). Nor need the affidavit be submitted by the head of the agency or department having control of the matter claimed to be privileged. The generally recognized rationale for requiring the head of the agency to submit the affidavit is that such a procedure ensures that the privilege is not lightly invoked. *See United States v. Exxon Corp.,* 87 F.R.D. 624 (D.D.C.1980). However, this requirement has been modified in recent cases. *See United States Dept. of Energy v. Brett,* 659 F.2d 154 (Temp.Emerg.Ct.App.1981), *cert. denied* [456 U.S. 936] 102 S.Ct. 1992 [72 L.Ed.2d 456] (1982); *Exxon Corp. v. United States,* 91 F.R.D. 26, 43–44 (N.D.Tex.1981). In *Exxon Corp. v. United States,* the court pointed out that the agency head need not inspect each document so long as "he establishes case-specific content guidelines which will insure appropriate and consistent invocation of the privilege by the agency." *Exxon Corp. v. United States,* 91 F.R.D. at 44. Indeed, in one recent case the court held that the *government counsel's* submission of the deliberative process privilege was sufficient where there is *in camera* review of the documents. *See United States Dept. of Energy v. Brett,* 659 F.2d at 155. *See also* Salzburg and Redden, *Federal Rules of Evidence Manual* 3d Ed. at 799, comments to Proposed Rule 509 (the Official Information privilege) (referring to *in camera* inspection of the documents claimed to be privileged, the authors state that "the full participation by the judge in official information cases, [as opposed to state secrets cases] warrants allowing the claim of privilege to be made by a government attorney"). These recommended procedures provide that the affidavit asserting the deliberative process privilege be submitted by an official (as opposed to the head) of the agency which has custody of the document. It is expected that such official will set forth in the affidavit the reasons why the privilege applies in that instance.

In its memorandum, the government suggested that the relevance of a document to which a deliberative process privilege claim is asserted be determined *prior* to requiring the government to formally claim the privilege. This argument raises a fundamental issue of discovery which in the judgment of the Special Master has not been fully examined by the courts, to wit: may a non-party raise an issue of relevancy as to documents in its possession which are sought by parties in litigation? While there is some case law supporting defendants' position that relevance is not an issue which a non-party has standing to raise, *see e.g., Ghandi v. Police Department of City of Detroit,* 74 F.R.D. 115, 123 (E.D.Mich.1977); *Cooney v. Sun Shipbuilding & Drydock Company,* 288 F.Supp. 708, 717 (E.D.Pa.1968), it is my judgment that the recent analysis of Judge Conner of the Southern District of New York in *Fein v. Numex Corp.,* 92 F.R.D. 94 (S.D.N.Y.1981), sets forth a more rational position. In *Fein,* the court held that a non-party has standing to object to production on relevancy grounds. In so doing, the court noted the relationship between relevancy and burdensomeness. "[I]t is difficult to imagine a considered evaluation of burdensomeness in the abstract without balancing the degree of burdensomeness against the extent to which the discovery sought is relevant to the issue in the litigation." Id. at 96. In view of the recommendation set forth below that documents will be reviewed by the Special Master *in camera* and that he will consider relevancy as a factor in determining whether the deliberative process privilege will apply, the government's proposal that relevancy be determined prior to assertion of deliberative process privilege is rejected.

In reviewing a claim of deliberative process privilege, the Special Master will use the standards succinctly described by Judge Weinstein in *In re Franklin National Bank*

*Securities Litigation,* 478 F.Supp. 577, 582 (E.D.N.Y.1979). The following factors were cited by Judge Weinstein:

(a) the relevance of the evidence sought to be protected;

(b) the availability of other evidence;

(c) the "seriousness" of the litigation and the questions involved;

(d) the role of the government in the litigation; and

(e) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

It is recommended that the following procedures for the government's assertion of deliberative process privilege be adopted by the court. Because of differences in the two discovery devices, the procedure for assertion of the privilege for documents differs from the procedure for asserting executive privilege at a deposition; the procedures for each are set out separately below.

### A. *Documents*

(1) Where the government raises an objection to production of a document based on the deliberative process privilege, it will

(a) submit to the parties and the Special Master an affidavit by an official of the agency who has custody of the document claimed to be covered by the privilege. The affidavit shall describe in general terms the document allegedly privileged, shall assert why the privilege applies and shall contain a statement of the type of harm which would result from disclosure; and

(b) make the document available to the Special Master for *in camera* inspection.

(2) Within seven days after the government has submitted its affidavit, the party seeking disclosure shall submit to the Special Master and the government a statement of litigative need, explaining why the interests in disclosure outweigh the interests in non-disclosure.

(3) Thereafter, the Special Master shall rule on the privilege claim and transmit his report containing his Findings of Fact and Conclusions of Law to the Court. The par-

ties and the government may appeal the Special Master's Findings of Fact and Conclusions of Law within 10 days of their transmission to the Court in accordance with Rule 53 of the Federal Rules of Civil Procedure and Pretrial Order No. 35.

### B. *Depositions*

(1) If a government witness is barred from answering a question posed at his deposition by reason of the government's assertion of the deliberative process privilege, the party seeking a response to the question shall submit to the government and the Special Master within 7 days after the deposition a copy of the deposition questions which remain unanswered together with a detailed statement of litigative need.

(2) Within 7 days thereafter, the government will submit

(a) to the parties and the Special Master an affidavit by an official of the agency on whose behalf the privilege is asserted. The affidavit shall state that the affiant is familiar with the answer the deponent would have given, and shall assert why the privilege applies and the type of harm disclosure of the response would cause; and

(b) to the Special Master a detailed summary of the responses which the witness would have made had the government not asserted the privilege.

(3) The Special Master shall rule on the privilege claim and transmit his report containing his Findings of Fact and Conclusions of Law to the Court. The parties and the government may appeal the Special Master's Findings of Fact and Conclusions of Law within 10 days of their transmission to the Court in accordance with Rule 53 of the Federal Rules of Civil Procedure and Pretrial Order No. 35.

### II. *State Secrets Privilege*

The state secrets privilege "protects information not officially disclosed to the public concerning the national defense or the international relations of the United States." *Kinoy v. Mitchell,* 67 F.R.D. 1, 8

(S.D.N.Y.1975) *quoting* Wright & Miller, *Federal Practice & Procedure:* Civil § 2019, 158 (1970). The threshold requirements for assertion of the privilege are stated in *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528 [97 L.Ed. 727] (1953), in which the Supreme Court upheld a claim of state secrets privilege: There must be a *formal claim* of privilege, lodged by the *head of the department* or agency which has control over the matter after *personal consideration* by that officer. *Id.* at 7–8, 73 S.Ct. at 532. These requirements are strictly enforced. *See, e.g., Halkin v. Helms* [690 F.2d 977 at 991], No. 80–2214, slip op. at 25 (D.C.Cir. Sept. 21, 1982); *Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975).

Unlike the deliberative process privilege, the state secrets privilege is absolute, *Halkin ·v. Helms* [690 F.2d 977 at 990], No. 80–2214, slip op. at 23, (D.C.Cir. Sept. 21, 1982); demonstration of litigative need by the party seeking disclosure will not overcome the privilege. *Id.* However, need is a factor in determining how carefully a court will scrutinize the government's assertion of privilege. *See United States v. Reynolds,* 345 U.S. 11, 73 S.Ct. 528, 533 [97 L.Ed. 727] (1953); *Halkin v. Helm* [690 F.2d 977 at 990], No. 80–2214, slip. op. at 23 (D.C.Cir. Sept. 21, 1982). *In camera* inspection of a document which the government claims is protected by state secrets privilege is not automatic, *see United States v. Reynolds,* 345 U.S. at 10; 73 S.Ct. at 533, although one court has interpreted *Reynolds* as permitting *in camera* inspection where need is great and the government's claim is *otherwise unsubstantiated. Kinoy v. Mitchell,* 67 F.R.D. at 8 (emphasis added), *citing United States v. Reynolds,* 345 U.S. at 9–10, 73 S.Ct. at 528. *See also Halkin v. Helms* [690 F.2d 977 at 990 n. 54], No. 80–2214, slip op. at 23 n. 54 (D.C.Cir. Sept. 21, 1982); *American Civil Liberties Union v. Brown,* 619 F.2d 1170, 1173 (7th Cir.1979).

Much of the discovery for the Phase I trial—the government contract defense—requires production of documents which are in the custody of various government agencies including the Departments of Defense, Army and Air Force or high level officials connected with these departments. Relevant matters concern the chemical defoliant program used by the military during the Vietnam War. Obviously some of this material is highly sensitive, touching areas which may affect the national security or may contain state secrets. The following recommended procedures for assertion of the state secrets privilege refine customary procedure, and at the same time maintain the standards previously set by the courts for determination of state secrets privilege. These procedures seek to accommodate the needs of the parties while protecting sensitive materials and minimizing the burden on the government.

In its memorandum on state secrets privilege, the government suggested that relevance of a document which the government seeks to withhold from production on grounds of state secrets privilege be determined prior to requiring the government to formally claim the privilege. In contrast, the *Reynolds* procedure suggests that, in order to assert the state secrets privilege, the government would be required to submit an affidavit from the head of the department having custody of the document whether a document is relevant or not.

In view of the numbers of documents requested here and the potential number which might be protected by state secrets privilege, requiring the government to follow the *Reynold's* procedures for a document which is not relevant may be oppressive and burdensome. *See, e.g., Fein v. Numex Corp.,* 92 F.R.D. 94, 96 (S.D.N.Y. 1981). See discussion, *supra,* at 6–7 [at 430–431].

Accordingly, it is recommended that where the government believes that a document is protected by the state secrets privilege and also believes that it is irrelevant to the subject matter of this litigation, the government will submit an affidavit of non-relevance prior to any assertion of state secrets privilege. The government will then submit to the Special Master for *in camera* inspection either the document itself or a more detailed affidavit of non-rele-

vance.[2] This affidavit need not be made by the head of the department as long as the affiant has knowledge of the document and sets forth the criteria used to determine non-relevancy. The parties opposing the government's position will then have an opportunity to submit papers detailing the reasons why the document is relevant. Where the Special Master determines that the document is relevant, the government will thereupon assert the state secrets privilege in compliance with *Reynolds,* that is, submission of an affidavit by the *head* of the department which has control of the matter, after personal consideration by that official, stating the reasons why harm would result from disclosure of the document.

This procedure—submission of an affidavit of non-relevance—is only to be used where the government believes that the document is also protected by a state secrets privilege. By permitting a preliminary showing of non-relevancy, it frees department heads from reviewing every document which the government claims is protected by state secrets and thereby lessens the burden on the government of discovery of these documents. At the same time, these procedures follow the dictates of *Reynolds* and case law by requiring department heads to formally claim the privilege with respect to relevant documents.

These procedures also permit, but do not require, the government to submit for *in camera* inspection the documents or a more detailed affidavit explaining why the documents should not be disclosed. In *Kinoy v. Mitchell,* 67 F.R.D. 1 (S.D.N.Y.1975), the court interpreted *Reynolds* as permitting *in camera* inspection of the documents where the litigative need of the party seeking disclosure is great and the government's claim is otherwise unsubstantiated. *Id.* at

8. However, as stated in *Reynolds,* where it is possible from the circumstances of the case to show that there is a reasonable danger that compulsion of the evidence will expose military matters which should not be divulged in the interest of national security, the court should not impair the very security which the privilege is meant to protect by insisting upon examination of the evidence in chambers. *United States v. Reynolds,* 345 U.S. at 10, 73 S.Ct. at 593. In view of this, it is undesirable to require *in camera* inspection of the document or even a detailed affidavit for every assertion of state secrets. However, in such cases where a state secrets privilege is preceded by a relevancy objection, the government should submit the document or a more detailed affidavit for *in camera* review in addition to the affidavit of non-relevancy. It is recommended that the following procedures for the government's assertion of state secrets privilege be adopted:

## A. *Documents*

(1) Where the government believes that a document (or series of documents[3]) is protected by the state secrets privilege, but is not relevant to the issues in the case as they have been developed, the government will supply to the parties and the Special Master an affidavit by one having knowledge of the document. The affidavit shall indicate why the document is not relevant to the issues in this case.

(2) The government will also either:

(a) submit the document to the Special Master for *in camera* review;[4] or

(b) submit a more detailed affidavit by one having knowledge of the document(s) stating why the document is not relevant.

---

**2.** Where the document which the government claims is privileged is not produced for *in camera* examination of its relevance, the Special Master's standard for determining relevance will be a broad one; where the document is produced for inspection, the standard of review will be narrower.

**3.** One document alone may not be sufficiently sensitive to support a claim of state secrets privilege, however, if produced together with other such documents, the series, released as a whole would create reasonable danger of exposing military secrets.

**4.** The Special Master has been cleared to review top secret classified documents.

(3) Within 7 days thereafter, the party seeking disclosure of the documents will submit to the Special Master and the government a statement why the document is relevant.

(4) Where the Special Master determines that a document (or series of documents) is relevant (or where the government does not dispute relevance), and the government asserts the state secrets privilege, the government will submit to the parties and the Special Master an affidavit by the head of the agency which has control over the matter. The affidavit shall describe the document (or series of documents) in general terms, shall state that the affiant has personally examined the documents and shall state further the harm which the government claims would result from disclosure of the document.

(5) Within 7 days, the party seeking disclosure shall submit to the Special Master and the government a statement of litigative need.

(6) The government may also submit to the Special Master for his *in camera* inspection the document(s) which it claims is protected or an affidavit describing in more detail the document(s) and/or the harm which the government claims would result from disclosure.

(7) Thereafter, the Special Master shall rule on the privilege claim and transmit his report containing his Findings of Fact and Conclusions of Law to the Court. The parties and the government may appeal the Special Master's Findings of Fact and Conclusions of Law within 10 days of their transmission to the Court in accordance with Rule 53 of the Federal Rules of Civil Procedure and Pretrial Order No. 35.

B. *Recommended Procedure for Assertion of State Secrets Privilege Claims at Deposition*

(1) If a government witness is barred from answering a question posed at his deposition by reason of the government's assertion of the state secrets privilege, the party seeking a response to the question shall submit to the government and the Special Master within 7 days after the deposition, a copy of the deposition questions which remain unanswered together with a detailed statement of relevance and litigative need.

(2) In the event that the government disputes the relevance of the deposition questions, it will submit to the Special Master and the parties within 7 days an affidavit of non-relevance (as set out above in procedure (1) for asserting state secrets privilege for documents.) The government will also submit to the Special Master a summary of the responses the deponent would have made to the questions had the government not asserted the privilege.

(3) In the event the government does not dispute relevance or where the Special Master determines that the deposition questions are relevant, and the government asserts the state secrets privilege, the government will submit to the parties and to the Special Master within 7 days an affidavit by the head of the agency which has control over the matter. The affidavit shall state that the affiant has personally reviewed the deposition questions and the responses which deponent would have made had not the government asserted the privilege, and shall state further the harms which the government claims would result from disclosure of such response.

(4) The government may also submit to the Special Master for his *in camera* inspection a summary of the responses which the deponent would have made had the government not asserted the privilege.

(5) Thereafter, the Special Master will rule on the privilege claim and transmit his report containing his Findings of Fact and Conclusions of Law to the Court. The parties and the government may appeal the Special Master's Findings of Fact and Conclusions of Law within 10 days of their transmission to the court in accordance with Rule 53 of the Federal Rules of Civil Procedure and Pretrial Order No. 35.

DATED: February 11, 1983

Respectfully Submitted

s/ Sol Schreiber

SOL SCHREIBER

Special Master