**CHRISTMANN & WELBORN, a joint venture between John J. Christmann and J.M. Welborn, Plaintiffs,**

**v.**

**DEPARTMENT OF ENERGY FOR the UNITED STATES of America, Defendant.**

**Civ. A. No. CA–5–83–213.**

United States District Court, N.D. Texas, Lubbock Division

June 22, 1984.

James Craig Dodd, Stephen A. Ragucci, Mary Helm, Dodd & Helm, Enid, Okl., James H. Milam, Crenshaw, Dupree & Milam, Lubbock, Tex., for Plaintiffs.

James A. Rolfe, U.S. Atty., John Mitchell Nevins, Asst. U.S. Atty., Dallas, Tex., Janice Alperin, David Engels, Rona Totaki, U.S. Dept. of Energy, William French Smith, Atty. Gen., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

WOODWARD, Chief Judge.

Christmann & Welborn, a joint venture between John J. Christmann and J.M. Welborn ("C & W"), filed this action against the Department of Energy ("DOE") seeking certain information under the Freedom of Information Act, 5 U.S.C. § 552. Prior to filing suit, C & W had made three requests to DOE for documents relating to a civil action, *Christmann & Welborn v. Department of Energy*, 589 F.Supp. 576, No. CA–5–79–7 (N.D.Tex.) [hereinafter referred to as the "underlying action"], in which C & W had been held liable for overcharges on crude oil sales. *Id.* (Orders of December 20, 1982, and March 17, 1983). In its first request dated August 29, 1983, C & W basically sought all documents contained in DOE's audit file on C & W. On September 26, 1983, in two additional requests, C & W more specifically requested all the monthly narrative reports from the regional office to the general counsel, any and all office memoranda and reports, any correspon-dence to or from the regional office, any other reports mentioning C & W, and any "NOA's," "NOB's," and "NOC's" which, according to the request, were prepared by the Southwest Regional Office of the Internal Revenue Service and later transferred to DOE's regional office.

In its complaint, C & W acknowledges that DOE responded to the requests with an index of 235 documents from the audit file; however, C & W contends that such response does not comply with the requests and the requirements of the Freedom of Information Act.

DOE moves for summary judgment on the grounds that it has identified and released all documents responsive to C & W's requests, except for eleven documents which DOE claims are protected by attorney work product and predecisional privileges. DOE submits affidavits in support of its motion to show the extent and nature of the searches it conducted in response to the requests. These eleven documents have been personally examined *in camera* by the court in the underlying action and have been placed under seal, filed with the Clerk, and preserved for appellate review in that cause (CA–5–79–7). The documents have also been reproduced and placed under seal for appellate review in this case, CA–5–83–213.

C & W opposes the government's motion for summary judgment and asserts that there are numerous facts which remain in dispute. C & W submits an affidavit with its response. The issues raised by C & W will be discussed below in relation to the court's disposition of this motion.

After considering the motion, briefs in support and opposition thereto, affidavits of the parties, argument of counsel, and all other pleadings in this case, the court is of the opinion that the motion of DOE should be and the same is hereby GRANTED. The court further determines that there are no material issues of fact in dispute.

(1)

The complaint and the affidavits of both parties establish the essential facts which

entitle DOE to summary judgment in this case. C & W made three requests under the Freedom of Information Act, and DOE responded. The subject of the requests is the audit of C & W by DOE, which, as mentioned above, was the subject of litigation between the parties in the underlying action. Discovery occurred in that case and judgment was eventually entered in favor of DOE. In that case DOE's audit file on C & W had been searched and indexed and all non-privileged documents had been released during the discovery proceedings. Therefore, in response to C & W's request under the Freedom of Information Act, DOE again made these documents available.

The United States Supreme Court recently addressed the interrelationship of civil discovery proceedings and the Freedom of Information Act. In *United States v. Weber Aircraft Corp.*, ── U.S. ──, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984), the Supreme Court refused to allow a party to obtain through the Freedom of Information Act material that is privileged in civil proceedings. In *Weber*, one of the defendants to a products liability action had sought discovery in that action of all investigative reports pertaining to an accident in which the plaintiff, an Air Force pilot, was involved. The Air Force had refused to release confidential portions of its safety investigation. These materials had been held to be privileged, and the party, Weber Aircraft, then sought the same information through the Freedom of Information Act. The district court found the material to be exempt under the Act, but the court of appeals reversed. The Supreme Court reversed the court of appeals, holding that Exemption 5 of the Freedom of Information Act incorporates civil discovery privileges. *Id.*, at ──, 104 S.Ct. at 1492. The Court expressly noted that to allow a party to "obtain through the FOIA material that is normally privileged would create an anomaly in that the FOIA could be used to supplement civil discovery. We have consistently rejected such a construction of the

FOIA." *Id.*, at ──, 104 S.Ct. at 1494. *See also Federal Trade Comm'n v. Grolier, Inc.*, 462 U.S. ──, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (in which the Supreme Court held that under Exemption 5 of the Freedom of Information Act, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared).

■ In the underlying action to which the case at hand relates, full discovery was pursued and the documents claimed exempt were reviewed by the court *in camera* and found to be privileged. What C & W was unable to accomplish during the civil discovery proceedings in the underlying action, it cannot now accomplish in this Freedom of Information suit.

### (2)

■ In C & W's response in opposition to DOE's motion, C & W asserts that there are eighteen [1] genuinely disputed material facts. However, several of these are irrelevant in determining whether summary judgment should be granted. These include all the issues concerning the timeliness of DOE's response to the requests and also those relating to whether DOE was given an extension to reply or not (Issues 1, 2, 3, 4, 5, and 9). These issues would be relevant were DOE claiming that the court was without subject matter jurisdiction, but this is not the case. DOE, by moving for summary judgment rather than for dismissal, implicitly concedes that the court has jurisdiction.

■ C & W also challenges the adequacy of the searches (Issues 7, 10, 11, 14, 15, and 16) yet offers no controverting evidence to indicate that the searches were not adequate and reasonable. DOE affirmatively shows by affidavit of the attorney who supervised the search in the underlying action that DOE's audit file on C & W had previously been searched and indexed and that all non-privileged documents had been produced in that case (Affidavit of Ellen Rosenberg-Blatt, ¶ 10). In response to C &

---

**1.** Although the issues are numbered through nineteen, there is no number six.

W's requests under the Freedom of Information Act, DOE again made these documents available. After responding to C & W by letter dated October 14, 1983, DOE searched its records again and released a monthly narrative report (Affidavit of Rosenberg-Blatt, ¶¶ 17–19). In its search, DOE also contacted agency staff who were deemed likely to know whether "NOA's, NOB's, or NOC's" existed but none of them knew of any such documents (Affidavit of Rosenberg-Blatt, ¶¶ 21–22). The submissions of C & W attempting to establish that the search by DOE was inadequate are principally based on conclusions and conjecture and are not based on the personal knowledge of the affiant. DOE affirmatively shows that it met the requirements of the Freedom of Information Act, that the documents it withheld in whole or part fall within Exemption 5 of the Act, and it is the finding of this court that the searches conducted by DOE were reasonable and met all of the requirements of law.

■ C & W also challenges the validity of the exemptions claimed by DOE (Issues 18 and 19). As mentioned above, this court previously examined all such documents *in camera* and found them to be privileged. C & W's contentions are therefore without merit. Even without the *in camera* examination, DOE used the correct procedures in asserting that the documents were privileged and therefore exempt from disclosure under the Freedom of Information Act. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *see also Department of Energy v. Brett*, 659 F.2d 154, 155–56 (TECA 1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982).

■ C & W further contends that there are genuine issues concerning the destruction of documents (Issues 12 and 13) but offers no controverting evidence in support of these contentions. There is no requirement under the Freedom of Information Act that an agency account for nonessential documents that were discarded or lost; all that is required is that the agency conduct an adequate search, which DOE shows by uncontroverted evidence was done in this case.

■ Whether copies of the 235 documents were mailed in conjunction with DOE's reply of October 14, 1983 (Issue 8) is irrelevant in light of C & W's admission that it already had in its possession copies of these documents (Affidavit of James Craig Dodd at 7).

Lastly, C & W challenges the veracity of the government's affiants. The court has carefully reviewed the statements made by both parties' affiants and finds that the points on which disagreement arises are no more than common misunderstandings which inevitably arise in oral communications between people. None of the areas of disagreement concern crucial issues here and as discussed above these areas would warrant consideration only if the government were seeking dismissal on the grounds of lack of subject matter jurisdiction. These misunderstandings between counsel do not warrant any additional comment by the court.

Accordingly, it is Ordered, Adjudged, and Decreed that the government's motion for summary judgment is granted.